The Chief Justice

delivered the Opinion of the Court.
This is an action of ejectment. Sanders and others, the lessors of the plaintiff, claimed title to the land sued for—about four hundred acres—as the devisees of Mary Adair Hardin, who had, for the price of one hundred dollars, purchased the tract, in 1834, under an execution against estate descended to Charles Lynch and Mildred Smith, from their father Charles Lynch, deceased, and the defendants claimed it under a conveyance in 1825, to Charles Lynch, the son, from William Taylor, to whom the land had been conveyed, in 1810, by commissioners, who had sold it to him, in execution of a decree in favor of Breckenridge and others, against Charles Lynch, the father, on a mortgage given on it in 1802, by the latter to the former.
Verdict and judgment having been rendered in favor of the defendants in the action—two general questions, are now presented for our revision: first, was the judgment under which Miss Hardin purchased, valid? and 2nd, was the land subject to sale, as assets descended to Charles Lynch and Mildred Smith, as the only heirs of their deceased ancestor?
Two returns of 'not found’ on a scire facias, operate (by an act of 1801,) as service of the writ—unless the defendant is an inhabitant of some other county in this state, than that of the returning officer. But judg’t on such returns (“two nihils”) is expressly prohibited (by an act of 1796,) unless the defendant is resident in the county, or is absent from the state.
A sheriff’s return of ‘no inhabitant’ proves that the defendant is no inhabitant of his county; not that the defendant is, or is not a nonresident, or absent from the state—a fact which a sheriff could not certify officially.
Two returns of ‘not found,’ will authorize a judgment of revivor, in sci. fa. where the defendant is out of the state; and that he is so—being a fact entirely consistent with the return, may be proved by evidence dehors the writ & return. So—
Where the record of a judgment on a sci fa. is offered as evidence, and it appears, the judg’t was rendered on sheriff’s returns of ‘not found,’ it cannot be deemed void, but may be sustained by parol proof, showing that the defendant was not in the state at the time; or it may be presumed that the judg’t was founded on sufficient proof of the fact.
*60 First. A judgment against Charles Lynch, deceased, had been revived against his two heirs, upon what the Circuit Court considered two nihils. The execution under which Miss Hardin purchased the land, was issued on this latter judgment for execution, against estate descended to the heirs from their father; and the counsel for the defendants in error insist that, the judgment for execution was void as to Charles Lynch, because, as he argued, the returns on the scire facias did not authorize it. On one of the writs, the sheriff returned that the said Charles had not been found, and was no inhabitant of his county; and on the other writ, the return was, “ not found.”
According to the seventh section of an act of 1801 (Stat. Law. 1430,) two returns of “not found,” like two nihils, according to laws of England, operate as legal service of a writ of scire facias, unless the person as to whom such returns had been made, was an inhabitant of some other county in the State than that of the returning officer. And although one of the returns in this case showed that Charles Lynch was not an inhabitant of the sheriff’s county, yet it did not show that he was a resident of Kentucky; and if he did not reside in this State, two returns of “not found” authorized the judgment of revivor. And on the trial of this case the plaintiff offered to prove that, Charles Lynch was, at the dates of the returns, a resident of the State of Mississippi. That proof we deem competent because it did not contradict the sheriff’s return, and only rendered certain a fact concerning which the return had been uncertain; and therefore, whilst perfectly consistent with the return, it showed that there could be no ground for even presuming that the judgment was prohibited by the 18th section of the act of 1796, (Stat. Law, 1429,) which provides that “no judg-“ment shall be rendered on the return of two nihils, un“less the defendant reside in the district or county, or “unless he be absent from the commonwealth.”
But without such parol proof, we could not decide that the judgment in this case was void, merely because the sheriff’s return did not certify a fact which he could not have officially known, and therefore had no authority to *61 return—to wit: that Charles Lynch, who—as the sheriff had a right to certify—was no inhabitant of his county, was also no inhabitant of any other county in Kentucky. Upon such a return as that which was made, it was the duty of the Court, either to presume that Charles Lynch was absent from the State, or to hear extrinsic evidence of that fact; for, as the fact existed, it could not have been ascertained in any other mode; and no judgment was proper without some proof or presumption of its existence; and consequently, according to the principle recognized in the cases of Bustard, vs. Gates and wife, (4 Dana, 429,) and that of Singleton vs. Coger, (7 Ibid. 479,) and Jeffries vs. Callis (4 Ibid. 465,) the judgment on the scire facias should not have been adjudged void, on the face of the record of it.
A mortgaged estate was about to be sold under a decree, for the debt, when the mortgagor, mortgagee, and a third party, agreed, in writing, that, if a reasonable price was not bid for the estate, the third party, as trustee, should buy it in, pay off the debt, and hold the estate in trust for certain creditors and for his own indemnity; and that when those ends were answered, the estate should revert to the mortgagor. In pursuance of this agreement, the party made the purchase, and obtained a commissioner's deed which, however, was silent as to the agreement, and purported to pass a complete title, in pursuance of the decree:—
The agreement, prior to, and independent of the deed, could not have the effect of revesting the title in the mortgagor.
Second, The Plaintiff’s counsel has argued that the legal title had been revested in Charles Lynch, deceased, prior to his death, which occurred in 1824; or that, if it had not been so revested, it was held fraudulently by Taylor, for the purpose of evading the just demands of creditors; and therefore, although the conveyance to Charles Lynch, the son, after his father’s death, recites a consideration of fifteen hundred dollars, as paid by him to Taylor, and the payment of which is established by the plaintiff’s own testimony; yet, the land should be liable in his hands, as so much estate descended, in judgment of law, from his father.
The counsel for the defendants in error, deny that there was, either any such revestiture of title in the decedent, or any such fraudulent collusion between him and Taylor, or that the land can be deemed legal assets descended to Charles Lynch, the son.
Prior to Taylor’s purchase, under the decree on the mortgage, the mortgagor, mortgagees, and himself, agreed, in writing, that if no person should offer a reasonable price at the sale, Taylor should, as a trustee, become the purchaser, pay the mortgagees, and hold the title in trust for some other designated creditors, and for his own indemnity. The parties also stipulated that, whenever all *62 the trusts had been fulfilled, and Taylor had been reimbursed and indemnified, the title should revest in Lynch, the mortgagor.
Continued occupancy of the estate by the mortgagor, during his life—14 years only, does not raise a legal presumption of reconveyance.
If a jury might find that the purchaser took the conveyance to defeat creditors—that fact would not make the estate assets in the hands of the heir; for tho' the conveyance might have been fraudulent and void as to creditors, it was effectual to pass the title as between the parties to it, and prevent the estate from descending to the heirs.
But, if the heir acquired the conveyance from the purchaser, without consideration or mala fide with a knowledge that he had no rightful lien upon it, the law would consider both of the conveyances fraudulent, and, without circuity, hold the land liable as estate descended.
But if the heir, to obtain the title, paid part of the value of the estate, bona fide, out of his own funds, tho’ the residue of the consideration may have been his claim as heir, or the heirship of himself, and a coheir, for whom he received it in trust; still, the conveyance to him, being entire and indiscriminate, no definable part of the land could be deemed legal assets in his hands, subject to ex’on, as such. Though a court of equity might afford relief to a judgment creditor, so far as the heirship was the consideration.
*62 But the conveyance to Taylor, by the commissioners, contains no such stipulation; but purports that an absolute and indefeasible legal title was thereby vested in him, conformably with the decree for a sale of the land. And it is evident that the stipulation in the prior and independent executory agreement, could not have had the effect of revesting in Lynch, the title afterwards conveyed to Taylor by the commissioners.
Nor should a re-conveyance be presumed from lapse of time and continued occupancy by the decedent, during his life time: Such possession for only fourteen years, cannot per se authorize a legal presumption of re-conveyance or relinquishment.
Even if, as assumed by the plaintiff’s counsel, a jury might infer that Taylor held the title for the fraudulent purpose imputed, nevertheless, that fact alone would be insufficient to convert the title of Charles Lynch, as purchaser from Taylor, into an estate by descent, so as to subject it as assets, to sale under the execution against him as heir; for as decided in the case of Ralls vs. Graham, 4 Monroe, 120, although the creditors of Charles Lynch, deceased, might, in his life time, have subjected the land; because a conveyance of it for the purpose of defrauding them, would, as to them, have been void—yet, as the conveyance was nevertheless legally valid between the parties to it, Lynch’s heirs could have acquired no title by descent, against the will of Taylor.
But, according to the principle established in the cases of Campbell vs Harrison, and Warren vs Hall, 6 Dana, if Charles Lynch, Junior, acquired the title or use from Taylor without consideration, or mala fide, with a knowledge of the alleged fraud, or of the nonexistence of any just right in Taylor to fifteen hundred dollars for so much due him, in consequence of advances made by him in execution of the trust created by the agreement of 1808, or as a purchaser under an execution which was levied on the land after he had purchased under the mortgage—then the law would consider the conveyance of 1825 as also *63 fraudulent, or merely colorable, and would, without circuity, hold the land liable as estate descended.
If a scire facias to revive a judgment against two heirs is served on one only, a judgment taken upon that service, against both, will be void as to the def't on whom there was no service, yet valid, tho’ erroneous, as to the other.
A jury was misinstructed, that a certain judg’t (ut. sup.) was entirely void: if they had based their verdict on that instruction, it must have been for pl’tfs, for part of the land in controversy: it was for the def’ts for the whole; and the instruction, it seems was not prejudicial to the pl’tfs, and the judgment against them, is therefore (hesitatingly,) affirmed.
If, however, as may be the fact, Charles Lynch could not have obtained Taylor’s conveyance without paying him fifteen hundred dollars, and if, therefore, he did, in good faith, pay that sum out of his own estate, he was so far a bona fide purchaser; and therefore, though he may have acquired a portion of the value of the land in consequence only of his being one of his deceased father’s heirs, and in trust for his his sister also, still, as the conveyance, to him, as purchaser, was entire and indiscriminating, no distinct or ascertainable portion of the land can be deemed legal assets subject to sale under the execution. In such a case, a court of equity alone can afford to the judgment creditor an appropriate remedy, by subjecting so much of the value of the land as shall remain after deducting the amount actually paid by Charles Lynch Jr. to Taylor, unless the said Charles will pay to the creditor the amount due to him.
Instructions were given to the jury, and others refused, on the trial. But we are of the opinion that the circuit Judge did not err substantially, to the prejudice of the plaintiff in error, in either giving or refusing instructions, so far as the title of the defendants is concerned; and we should not hesitate to approve the verdict and affirm the judgment upon it, had not the Circuit Court instructed the jury that, as to Charles Lynch Jr. the judgment of revivor on the scire facias was void. In this opinion, there was error, as we think. We have felt some difficulty in deciding whether that error should be judicially considered as prejudicial to the plaintiff. But on full consideration, we are of the opinion that, it should not be so considered.
If the judgment had been, as the Circuit Court decided, void as to Charles Lynch, it was not therefore void, but only erroneous, as to Mildred Smith, and the judgment being valid as to her, and so admitted by the court on the trial, the jury could not as they did, have found a verdict for the defendants, as to the whole of the land, unless they had decided that Taylor’s conveyance to Charles Lynch passed the title to him, as a purchaser, in *64 such a manner as to show that Mrs. Smith held no legal interest in the land, by descent; and consequently, we must presume that the jury decided upon all the facts litigated in the case, precisely as they would have done had they not been instructed in effect to find for Charles Lynch.
Wherefore, as, in our opinion, the evidence, as here exhibited, authorized the verdict, we must affirm the judgment of the Circuit Court.